IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

ELIZABETH L. ELWARD

Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

Defendant.

3:10-CV-6394-MA

OPINION AND ORDER

KATHRYN TASSINARI
BRENT WELLS
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

LISA GOLDOFTAS
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
(206) 615-2531

Attorneys for Defendant

MARSH, Judge.

Plaintiff seeks judicial review of the Commissioner's January 15, 2010, final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83(f),[1] and an order remanding this matter to the Commissioner for further proceedings.

Plaintiff contends the Commissioner's final decision is not based on substantial evidence, and this matter should be remanded to the Commissioner either for further proceedings or for the immediate payment of benefits.

For the reasons below, the court concludes a remand for the immediate payment of benefits is appropriate.

## BACKGROUND

Plaintiff applied for Supplemental Security Income (SSI) on April 9, 2007. In her application, plaintiff asserts she has been disabled since April 2007 because of S1-S5 radiculitis and disabling lumbar strain. She also presented medical evidence, however, that she has workplace limitations related to psychological impairments.

On January 6, 2010, plaintiff and a vocational expert (VE) testified in a hearing before an administrative law judge (ALJ).

On January 15, 2010, the ALJ found plaintiff is able to

[1] Plaintiff's application originally was filed as a claim for disability insurance benefits but was properly considered as an application for SSI.

perform light unskilled jobs such as motel worker, small products assembler, and laundry folder, which are available in Oregon and in the national economy.

On September 23, 2010, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

**THE ALJ'S FINDINGS**

The Commissioner has developed a five-step sequential inquiry to determine whether a plaintiff is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive. The ALJ found as follows:

Step One - plaintiff has not engaged in substantial gainful activity since she applied for benefits;

Step Two - plaintiff has severe impairments of degenerative disc disease of the lumbar spine, angioedema (swelling below the surface of the skin), dysthymic disorder, anxiety disorder NOS, and personality disorder NOS. 20 C.F.R. § 416.920(c);

Step Three - plaintiff's impairments or combination of impairments do not meet or medically equal a listed impairment. 20 C.F.R. §§ 416.920(d), 416.925 and 416.926. Plaintiff retains the residual functional capacity to perform light work involving frequent balancing, kneeling, crawling, and climbing of ramps,

stairs, ladders or scaffolds, and occasional stooping and crouching. She must avoid temperature extremes. She is capable of performing unskilled work consisting of simple, routine tasks with simple instructions. She should have no contact with the general public and only limited contact with co-workers and supervisors;

Step Four - plaintiff is unable to perform her past relevant work as a nurse's assistant, dryer feeder, or belt/cannery worker. Plaintiff is able to perform the jobs of motel worker, small products assembler, and laundry folder.

Step Five - based on the above findings, plaintiff is not disabled and, therefore, is not entitled to SSI.

**LEGAL STANDARDS**

The plaintiff has the initial burden to prove she is disabled. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's final decision must be affirmed if it is based on proper legal standards and the ALJ's findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all the evidence in support of or detracting from the Commissioner's final decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The ALJ's decision, however, must be upheld even if the ALJ concludes the evidence "is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in failing (1) to give clear and convincing reasons not crediting plaintiff's testimony; (2) to credit a treating physician's disability opinion; (3) to address an examining psychologist's opinion as to plaintiff's psychological limitations; and (4) to ask an appropriate hypothetical to the vocational expert (VE) that accounted for the treating physician's disability opinion and plaintiff's marked psychological limitations.

## RELEVANT EVIDENCE

The relevant Administrative Record includes the hearing testimony, plaintiff's work and earnings history reports, and relevant medical records.

**Plaintiff's Evidence**.

On the hearing date, plaintiff was 36 years old. She lives with her husband and two daughters, ages six and eight. She has a high school education. She last worked in December 2006 for a lumber company in its plywood plant. Shortly before she left her employment with the lumber company, she injured her lower back on the job, causing severe back and left leg pain. Her employer did not accommodate her injury and treated her poorly.

Plaintiff continues to experience back pain regardless of her level of activity but it is worse when she stands too much or bends over. The pain radiates into her left leg when she bends

down. It is painful for plaintiff to carry her 60 lb disabled child to and from her bed. Plaintiff sleeps on her belly because of the pain.

Plaintiff "can't [do] too much of anything." She is able to stand for 10 minutes and walk for one block before her leg begins to hurt. She is able to hold her 5-10 lb nephew for a little while and can lift pots and pans. It is painful for her to sit in an upright chair. She sometimes spends hours of her time on her couch or in a recliner. Nevertheless, she does everything she needs to do to take care of her children despite her pain. One child is autistic and the other has epilepsy.

Plaintiff suffers from pancreatitis but had not had a flare-up since the previous summer. Plaintiff's hands and feet get cold quickly and swell even in warm weather. She avoids going out in cold weather.

Plaintiff becomes nervous, anxious, and claustrophobic in public and is terrified of gas stations. She dislikes and does not trust people in general and "can't stand cardboard, egg boxes, or foam" because of the sound they make, like a scratchy chalkboard. She occasionally shops for groceries if her husband or a friend is with her.

Plaintiff and her husband "regulate[]" her activities at home to limit her stress. She cleans and does chores around the house when her children are at school.

Plaintiff takes Vicodin for pain, Doxepin for depression, Promazine for nausea, and fish oil and Vitamin D supplements.

As of the hearing date, plaintiff was being treated by Mark Patton, D.O., for all of her ailments. He has advised her she has borderline anemia.

**Vocational Expert Evidence**.

Vocational Expert (VE) Nancy Bloom reviewed plaintiff's file and testified her past relevant work includes semi-skilled medium work as a nursing assistant, unskilled medium work as a dryer feeder, and unskilled light work as a cannery worker.

In response to a hypothetical by the ALJ that plaintiff is able to lift 20 lbs occasionally and 10 lbs frequently, stand, sit, and walk for six hours in an eight-hour workday, push/pull without limit, climb, balance, kneel, crawl frequently and crouch occasionally, all while avoiding extremes of hot or cold, the VE opined plaintiff would be able to perform the cannery worker job.

If, however, plaintiff is limited to unskilled work without public contact and only occasional contact with co-workers, she plaintiff would unable to perform her past relevant work, but would be able to perform the job of motel cleaner, small products assembler, laundry folder.

The VE also testified if plaintiff needed to sit for six hours in an eight-hour workday, and only occasionally grip, grasp, or finger, she would be unable to perform any of the jobs.

The VE opined if plaintiff were to miss work for more than two days a month, or if she needed frequent breaks during the day because of mood fluctuations, thus reducing her productivity by 10%-20%, she would not be able to perform any of the jobs.

**Relevant Medical Evidence - Treatment.**

Lawrence R. Barnes, M.D., Family Medicine.

In December 2005, plaintiff complained of a long history of anxiety, depression, and panic attacks but had never sought treatment for them. She was prescribed Lexapro for anxiety.

A January 2006 chart note reflects plaintiff's sister had been murdered ten months earlier, causing family difficulties. A month later, plaintiff was having difficulty sleeping.

In June 2006, plaintiff complained of back and right wrist pain as a result of a fall at work. Two weeks later she still had back pain with radiculopathy and wrist pain.

In July 2006, Dr. Barnes noted plaintiff had some tenderness in her lower back. An MRI of the her lumbar spine, however, was normal except for a mild broad-based posterior bulge at L4-5.

In August 2006, plaintiff continued to experience "low lumbar spine tenderness" and "sciatic notch tenderness."

In November 2006, in response to a letter from a Workers' Compensation specialist, Dr. Barnes opined that plaintiff would not be medically stationary "soon," but he noted he had not seen her recently.

In December 2006, Dr. Barnes, however, opined plaintiff was able to return to work if she were not required to lift more than 10 lbs, push, pull, twist, bend, stoop, crawl, or climb ladders. She would be able to stand, sit, and walk at will.

A week later, plaintiff complained that while working at her job outdoors, she "felt her knees were about to explode . . . as if someone was sticking pins in the popliteal areas in the back of her knees." During the examination, however, plaintiff was sitting and walking comfortably. An MRI of her lumbar spine showed a "very slight" disc herniation. Dr. Barnes recommended that plaintiff work indoors and sit on an ergonomic chair. Later that month, plaintiff continued to experience back pain. In addition, the back of her left knee felt like it was about to explode.

PT Northwest - Physical Therapy.

During June-July 2006, plaintiff treated with a physical therapist to whom she was referred by Dr. Barnes. The original treatment plan was for six visits over a two week period. On the initial visit, plaintiff's right arm was in a splint. She demonstrated an "over exaggerated pain response with very light palpation to wrist or to lumbar thoracic spine." However, plaintiff's systems were "consistent" with her diagnosis of back strain and right arm tendonitis. She was considered a "good candidate for rehabilitation services."

Plaintiff, however, stopped attending therapy sessions after four visits because of transportation problems.

Willamette Spine Center - Donald Olson, M.D. - Neurosurgeon.

In August 2006, Dr. Olson examined plaintiff at the request of Dr. Barnes and opined plaintiff's symptoms were consistent with a diagnosis of either L5 or S1 lumbar radiculitis. After reviewing an MRI, he further opined "the diagnosis of lumbar strain . . . is incorrect. There is more than lumbar strain and the likelihood of this being discogenic is quite high."

Dr. Olson performed an epidural procedure at the S1-L5 level of plaintiff's spine. After the procedure, Dr. Olson confirmed it was highly probable plaintiff had "discogenic involvement with leakage of alpha II phospholipase causing direct radiculitis on the L4 nerve on the left side."

In January 2007, Dr. Olson noted a second epidural procedure was recommended but not done, and that plaintiff had "profound weakness of the dorsitoe" on the left side while sitting with her legs outstretched, and exhibited "symptoms of distress."

In February 2007, attorneys for plaintiff's former employer sought confirmation from Dr. Olson that her low back pain with radiculitis was not related to a lumbar strain. He agreed, but stood by his diagnosis that plaintiff has L4 radiculitis.

Mark A. Patton, D.O. - Family Practitioner.

In October 2007, Dr. Patton began treating plaintiff for

localized swelling in both wrists and intermittent sharp pain on the right side radiating into the right palm and on the left side radiating into the left forearm. Plaintiff had sharp pain for a few minutes with weakness and numbness in both hands. She also complained of a migraine headache.

In March and April 2009, Dr. Patton opined plaintiff had lumbar disc disease based on her complaints of back pain and stiffness. Although she was unable to stand erect, plaintiff did not have muscle aches or localized joint pain or stiffness.

In December 2009, Dr. Patton signed a letter prepared by plaintiff's counsel in which he agreed plaintiff has "physical problems that limit her but would not preclude her from doing all work." Dr. Patton also opined, however, plaintiff has a "mental health condition" related to hypomania, anxiety in social situations, and agoraphobia that would prevent her from consistently sustain[ing] a forty-hour work-week."

**Medical Evidence- Examination.**

Timothy Borman, D.O. - Orthopedic Surgeon.
Brian Denekas, M.D. - Neurologist.

In October 2006, Dr. Borman and Dr. Denekas conducted an "independent medical examination" of plaintiff in connection with her claim for workers' compensation benefits in which she alleged she suffers from low back pain caused by an on-the-job injury. An MRI and x-rays of the lumbar spine were normal. The

doctors agreed plaintiff had significant nonobjective findings but her complaints were unrelated to her workplace injury.

In February 2007, counsel for plaintiff's employer relating to her workers' compensation claim sought clarification from both doctors regarding their medical opinions in connection with that claim.

Dr. Borman agreed that there was no objective evidence that plaintiff experienced radiculitis at any lumbar level. However, he disagreed with counsel that "plaintiff's complaint of back pain had no physiologic basis" by noting that the "Marxers Test was positive."

Dr. Denekas also disagreed that there was no objective evidence to support plaintiff's claim of low back pain, or that Dr. Olson's diagnosis of L4 radiculitis was inconsistent with the objective medical evidence.

**Medical Evidence - Consultation**.

Mary Ann Westfall, M.D.
Martin Kehrli, M.D.
William Backlund, M.D.

After reviewing the medical records, Dr. Westfall opined that plaintiff was not fully credible because of her exaggerated pain responses. Dr. Westfall gave no weight to Dr. Olson's opinion because it was inconsistent with the objective findings during examination and treatment.

Accordingly, Dr. Westfall concluded, and Drs. Kehrli and Backlund agreed, that plaintiff has the residual functional capacity to lift 20 lbs occasionally and 10 lbs frequently, sit, stand, and/or walk for at least six hours in an eight-hour workday, push/pull on an unlimited basis, frequently climb, balance, kneel, and crawl, and occasionally stoop and crouch.

**Psychological Evidence - Examination.**

Jill Spendal - Psy.D - Psychologist.

Dr. Spendal performed a psychological evaluation. Plaintiff appeared to put in good effort but exhibited rapidly changing emotions. Her IQ tested in the average range. Her verbal IQ was low average and her performance IQ high average. Dr. Spendal diagnosed Personality Disorder NOS based on symptoms of chronic dysthymic depression and anxiety. Until plaintiff's mental health was "stabilized," she would continue her behavior of not showing up regularly for work. Accordingly, plaintiff would require "regular psychological counseling" before returning to work. Dr. Spendal recommended a medication evaluation to address options to treat plaintiff for depression and anxiety management. She also stated "[g]iven it is unclear how long it will take [plaintiff] to become engaged in therapy she may want to continue on with her application for disability." Nevertheless, Dr. Spendal assigned plaintiff a GAF score of 65 (mild symptoms or some difficulty in social, occupational, or school functioning).

**DISCUSSION**

**Plaintiff's Testimony.**

Plaintiff contends the ALJ did not give clear and convincing reasons for not crediting her testimony regarding the severity of her physical and psychological impairments. I agree.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, the ALJ found that although plaintiff's impairments "can be expected to cause some symptoms and limitation, the extent of her reports [of her impairments] are not supported by the objective evidence." To support that finding, the ALJ noted purported inconsistencies between plaintiff's claimed limitations as to daily activities and those reported by her husband, who is disabled. He reported that plaintiff helps to takes care of him and their children, including doing minor grocery shopping, and feeding, bathing, and dressing them, although "it takes awhile" for her to complete those tasks." His wife also does house and yard work for approximately 45 minutes twice a week, although friends and other family members help with the chores.

The ALJ also stated the physical therapist who treated plaintiff noted plaintiff's "over-exaggerated pain response with very light palpation to wrist or to lumbar thoracic spine." The physical therapist, however, also noted plaintiff's symptoms were "consistent" with a diagnosis of back strain and right arm

tendonitis. Accordingly, she was considered a "good candidate for rehabilitation services."

On this record, the court concludes plaintiff's testimony and her husband's description of her daily activities are not inconsistent and, accordingly, that evidence does not undermine her claim that she is unable to engage in substantial gainful activity in the workplace. The court also concludes there is substantial objective medical evidence in the record relating to radiculating pain in her lumbar spine to explain plaintiff's pain responses that the ALJ found not credible.

Accordingly, the court concludes the ALJ did not give clear and convincing reasons for rejecting plaintiff's testimony.

**Treating Physician's Disability Opinion.**
**Examining Psychologist's Opinion.**

Plaintiff contends the ALJ erred in failing the credit the medical opinion of either treating physician, Dr. Patton, that plaintiff has a "mental health condition" related to hypomania, anxiety in social situations, and agoraphobia that would prevent her from consistently sustain[ing] a forty-hour work-week," or the opinion of examining psychologist Dr. Spendal that plaintiff would require "regular psychological counseling if she is to return to work," and she "may want to continue on with her application for disability."

Instead, the ALJ relied Dr. Spendal's assignment of a GAF score of 65 to plaintiff (mild symptoms or some difficulty in social, occupational, or school functioning).

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir.2007); *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir.1996). The uncontradicted opinion of a treating physician is entitled to controlling weight, and may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *See Lester v. Chater,* 81 F.3d 821, 831 (9th Cir.1996). Even if a treating physician's opinion is contradicted by other substantial evidence, the physician's opinion is still entitled to deference and may be rejected only for specific and legitimate reasons supported by substantial evidence. *Lester,* 81 F.3d at 830; *Orn,* 495 F.3d at 6313.

The court notes Dr. Spendal's narrative report is not consistent with the GAF score of 65 she assigned to plaintiff insofar as her report suggests plaintiff would need psychological counseling if she were to return to work, and she might wish to continue pursuing her disability claim.

In light of this medical record, as to plaintiff's physical and psychological impairments, the court concludes the ALJ did not give specific and legitimate reasons supported by substantial evidence to reject Dr. Patton's opinion that plaintiff's ability to engage in substantial gainful activity is compromised by her "mental health condition."

**4. VE Opinion.**

Plaintiff contends the ALJ's hypothetical to the VE did not adequately take into account plaintiff's limitations relating to psychological impairments, including her ability to maintain concentration, persistence, or pace. Based on the discussion above, the Court agrees with plaintiff.

For all the reasons set forth above, the Court **DOES NOT ADOPT** the Commissioner's final decision **DENYING** Plaintiff's claim for SSI benefits.

**REMAND**

The issue is whether this matter should be remanded for further proceedings or for the immediate payment of benefits.

On this record, the court concludes a remand for the immediate payment of benefits is appropriate based on the objective medical evidence as to the severity of plaintiff's low back pain, and her psychological impairments.

**CONCLUSION**

For these reasons, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to Sentence Four of 42 U.S.C. § 405(g) for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 17 day of February, 2012.

Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge